## Graham's Petition

*Kunkle, Walthour & Trescher*, for motion.
*Avra N. Pershing* and *Edward G. Bauer*, contra.

PER CURIAM, June 27, 1938.—This is a motion to quash the appointment of viewers, which had been made for the purpose of assessing damages to land.

It appears that in 1928 or 1929, the County of Westmoreland in conjunction with the Highway Department undertook to improve certain roads in St. Clair Township, and in making this improvement it was necessary to abolish the grade crossing over the main line of the Pennsylvania Railroad in the Borough of Seward.

Proceedings were had before the Public Service Commission, the grade crossing was abolished and supplied by an overhead bridge or viaduct in the Township of St. Clair, just east of Seward.

In making these improvements and in constructing the abutments and approaches to the overhead crossing, some land in St. Clair Township belonging to H. S. Graham and Nannie G. Brown is alleged to have been taken, injured or destroyed.

The improvement was completed sometime in 1929, but damages to the land of H. S. Graham and Nannie G. Brown were never assessed or agreed upon. A petition asking for the appointment of viewers states in paragraph 10:

"That your petitioners were awarded the sum of $2,-590 for these damages by the Public Utility Commission of the Commonwealth of Pennsylvania, and the Township of St. Clair was ordered to pay the same but have refused to do so . . .".

This is not a correct statement of the facts and the word "awarded" was not advisedly used inasmuch as no damages were assessed by the Public Utility Commission, that body only undertaking to estimate the amount of the land damage at $2,590. So far as the record shows, no petition was ever presented to the Public Service Commission asking that actual damages to the land in question be assessed or awarded until the petition was presented to the Public Utility Commission of the Commonwealth of Pennsylvania by H. Seward Graham and Nannie G. Brown sometime in December 1937.

Following the presentation of this petition, the Public Utility Commission of the Commonwealth of Pennsylvania on March 22, 1938, made the following order:

"Now, to wit, March 22, 1938, Pennsylvania Public Utility Commission, under the provisions of section 411 of the Public Utility Law of May 28, 1937, P. L. 1053, on its own motion, submits to the Court of Common Pleas of Westmoreland County, wherein the property is located, the application of H. Seward Graham and Nannie G. Brown, for the determination of the amount of damages due by reason of the improvement ordered by the Public Service Commission on April 23, 1929, at Complaint Docket no. 7810."

In pursuance to this order, submitting the matter to this court, the property owners on April 16, 1938, presented a petition to this court asking for the appointment of viewers to view the premises affected by the improve-

ment and determine the damages for property taken, injured, or destroyed and make return of their proceedings according to law. On this petition, viewers were appointed as prayed for.

On May 11, 1938, the Township of St. Clair filed its motion to quash the appointment of viewers and vacate the proceedings for the reason that the appropriation and condemnation for which petitioners asked to recover damages was consummated April 23, 1929, and, no claim having been made for damages within six years from that date, the claim is now barred by the statute of limitation.

The abolition of the grade crossing, and the improvements made in connection therewith, was done under The Public Service Company Law of July 26, 1913, P. L. 1374, and the damage, of which complaint is made, was necessitated not by the improvement, opening, or widening of the roads or highways in question, but by the abolition and supplying of the grade crossing over the main line of the Pennsylvania Railroad, over which the Public Service Commission had exclusive jurisdiction and control.

Section 12 of article V of that act provides as follows:

"Except in cases in which grade crossings are in process of abolition at the time of the passage of this act, under agreement or contract with a municipality, as set forth in the proviso of section five of article three of this act, the commission shall have exclusive power to determine, order and prescribe, in accordance with plans and specifications to be approved by it, the just and reasonable manner, including the particular point of crossing, in which the tracks or other facilities of any public service company may be constructed . . . or in which any public highway may be constructed across the tracks or other facilities of any railroad corporation or street railway corporation at grade, or above or below grade; and to determine, order and prescribe the terms and conditions of installation and operation, maintenance and protection, of all such crossings . . . but in no case shall the approval or consent of any court, board, or other

commission or officer, or of any municipality, be necessary therefor."

In the case of Casarotto's Petition, 14 Leh. L. J. 224, Judge Reno said:

"Nothing can be profitably added to the unambiguous language of the Act. The commission has exclusive power in relation to grade crossings including the ascertainment and determination of the damages. The general authority of the Courts to ascertain damages caused by an exercise of the power of eminent domain is ousted. The question reaches the Courts only by an appeal thereto in accordance with the Act, (Art. VI; Sec. 17) whereby appeals from the commission's award of damages lie to the courts of the county where the injury was sustained."

It appears then that the matter of awarding damages to property holders as well as all other matters concerning the abolition of grade crossings was exclusively vested in the Public Service Commission, now the Public Utility Commission. This authority vested in the Public Utility Commission is not questioned by the Township of St. Clair, but it is strenuously contended that inasmuch as the damages alleged to have been incurred were not determined within the period of six years from the date of the improvement, the property owners may not have them assessed, and the Act of May 23, 1891, P. L. 109, as amended by the Act of June 11, 1935, P. L. 302 is relied upon for this position.

The Act of 1891, supra, is entitled: "An act to limit the period within which petitions for the assessment of damages for the opening or widening of any street, road or highway, may be filed in the court of quarter sessions." And that act as amended by the Act of 1935 provides:

"That petitions for the assessment of damages for the opening or widening of any street, road or highway, when the damages are not assessed by the view opening the road, may be filed in the court of quarter sessions within the period of six years from the final confirmation of a report, or the entry of a decree or order opening the said

street, road or highway, or within six years from the date of notice of the intended opening of the same, under an ordinance or resolution duly passed, but not thereafter. In the case of State highways or other highways or roads which the Secretary of Highways has authority to change, alter or widen, with the approval of the Governor, such petitions shall be presented within six years from the date of the approval of the plan by the Governor, but not thereafter. All claims shall be forever barred after the expiration of the said period of six years.

"Section 2. In all cases involving damages for the opening or widening of any streets, roads or highways, in which no time limit for the presentation of petitions or the expiration of a right of action has heretofore been fixed by statute, such petitions may be presented to the proper court of quarter sessions, and the right of action for damages may be claimed within six years from the date of final enactment of this act, and not thereafter in any manner."

We are of opinion that these acts do not apply to improvements such as the abolition and supplying of grade crossings exclusively within the jurisdiction of the Public Service Commission, now the Public Utility Commission, for the property, which is the subject of this proceeding and which is alleged to have sustained damages, was not taken, injured, or destroyed in the opening or widening of any street, road or highway, but was taken in the supplying of an overhead vehicular crossing over the Pennsylvania Railroad in the Township of St. Clair in lieu of the grade crossing at Indiana Street in Seward Borough, which was abolished, and the acts are entirely silent as to any proceedings before the Public Service Commission or as to any damages occasioned by improvements exclusively within the jurisdiction of that commission. At the time of the passage of the acts in question and until the passage of the Public Utility Law, supra, the courts of quarter sessions or of common pleas had no jurisdiction or authority in the appointment of viewers to assess dam-

ages occasioned by the abolition or construction of any grade crossings of any highways over the tracks of public utilities.

Under The Public Service Company Law of 1913, these damages were first determined by the Public Service Commission itself, after which any landholder, believing himself to be aggrieved, had the right of appeal to the court of common pleas, and under section 411 of the Public Utility Law of 1937 the power and authority to determine such damages is still lodged in the Public Utility Commission, which may "of its own motion, or upon application of any party in interest, submit to the court of common pleas of the county wherein the property affected is located, the determination of the amount of damages to any property owner due to such condemnation, for which such court shall appoint viewers, from whose award of damages an appeal to said court shall lie on the part of any person or party aggrieved thereby".

It will be noted that the Act of 1935 relates only to damages occasioned by the opening or widening of any street, road, or highway, and to highways or roads which the Secretary of Highways has authority to change, alter, or widen, and while section 2 of that act provides for the appointment of viewers in all cases involving damages for the opening or widening of any street, road, or highway, in which no time limit for the presentation of petitions, or the expiration of the right of action has heretofore been fixed by statute, this provision relates only to the subject of the act, that is to the opening or widening of roads, streets, or highways, and to such as the Secretary of Highways has authority to change, and does not relate to improvements over which the Public Service Commission or the Public Utility Commission has exclusive jurisdiction and control.

For this reason we believe that the Act of 1891, as amended by the Act of 1935, does not apply, and we are of opinion that the petition for the appointment of viewers to the Public Utility Commission of the Common-

wealth of Pennsylvania under date of December 20, 1937, was in time, and the action taken by the Public Utility Commission on March 22, 1938, in referring the matter of the appointment of viewers to this court, is not in conflict with any statute of limitation; that the appointment of viewers made by this court on April 16, 1938, was within the law and within the province and authority of the court and is not barred or prohibited by the Act of 1891, as amended by the Act of 1935, and that the motion to quash should, therefore, be overruled.

And now, to wit, June 27, 1938, after argument and after due and careful consideration, it is ordered, adjudged, and decreed that the motion to quash be and the same hereby is overruled.